MIED ProSe 14(Rev.5/16)Complaint for violation of civil rights(Prisoner Complaint

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN



STEVE ELLIS KARACSON

(Write the first name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write"see attached"in the space and attach an additional page with the full list of names

V.

(1) State of Michigan
(2) Michigan Department of corrections
(3) Wayne county jail
(4) Parnall Correctional Facility-David Shaver
(5) St. Louis Correctional Facility
(6) Judge Michael Hathaway, 3rd circuit court

(write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write"see attached"in the space and attach an additional page with the full list of names. Do not include addresses here.)

Case: 2:21-cv-12101
District Judge:  Laurie J. Michelson
Magistrate Judge: Stafford, Elizabeth A.
Filed: 09-01-2021
PRIS KARACSON VS STATE OF MICHIGAN, ET AL (DP)

Jury trial: X yes   No

(check one)

## Complaint for Violation of Civil Rights
### (Prisoner Complaint)

---

## NOTICE

Federal rules of civil procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filled with the court should not contain an individuals full social security number or full birth date;the full name of a person known to be a minor;or a complete financial account number. A filing may include only:the last four digits of a social security number;the year of an individual's birth;a minors initials;and the last four digits of a financial account number.

Except as noted in this form,plaintiff need not send exhibits, affidavits, grievances or witness statements, or any other materials to the clerk's office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

POOR QUALITY ORIGINALS

MIED ProSe 14(Rev 5/16) Complaint for violation of civil rights(Prisoner Complaint)

## I. The parties to this complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | Steve Ellis Karacson |

all other names by which you have been known:

None

ID Number 437637

Current Institution

Parnall Correctional Facility

Address

1790 E. Parnall Road
Jackson, Michigan, 49210.

### B. The defendant(s)

Provide the information for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the persons job or title(if known)and check whether you are bringing the complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No.1

Name                          State of Michigan

Job or Title
(if known)

Shield Number

Employer

Address

Individual capacity          X  Official capacity

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

Defendant No. 2

    Name             MICHIGAN DEPARTMENT OF CORRECTIONS

    Job or Title
    (if known)            _____

    Shield Number       _____

    Employer          _____

    Address           _____
                        _____

    ☐ Individual capacity     ☒ Official capacity

Defendant No. 3

    Name             WAYNE COUNTY JAIL

    Job or Title
    (if known)            _____

    Shield Number       _____

    Employer          _____

    Address           _____
                        _____

    ☐ Individual capacity     ☒ Official capacity

Defendant No. 4

    Name             PARNALL CORRECTIONAL FACILITY, ST. LOUIS CORR. FACILITY

    Job or Title
    (if known)            _____

    Shield Number       _____

    Employer          _____

    Address           1790 EAST PARNALL ROAD
                        JACKSON, MICHIGAN, 49210

    ☐ Individual capacity     ☒ Official capacity

Judge Michael Hathaway
Frank Murphy hall of justice
1441 St. Antoine street
Detroit, michigan, 48226.

[X] individual capacity                    [X] Official capacity

Violation of the 6th and 14th emmendments. Denial of counsel.

3B

MIED ProSe 14(Rev 5/16 Complaint for violation of civil rights(prisoner Complaint)

II. Basis for Jurisdiction

Under 42 U.S.C. 1983, you may sue state or local officials for the "deprivation of any rights, priveledges, or immunities secured by the constitution and [federal laws]." Under Bivens V. six unknown named agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A. Are you bringing suit against (check all that apply):

    Federal officials(a Bivens claim)
 X State or local officials (a 1983 claim)

B. Section 1983 allows claims alleging the "deprivation of any rights, priveledges, or immunities secured by the constitution and[federal laws]." 42 U.S.C. 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state and local officials?

(1) cruel and unusual punishment
(2) Violation of the 6th and 14th ammendments, denial of counsel.

C. Plaintiffs suing under bivens may only recover for the violation of certain constitutional rights. If you are suing under Bivens, what constitutional right(s) do you calim is/are being violated by federal officials?

4

MIED ProSe 14(Rev 5/16) Complaint for Violation of Civil Rights (prisoner complaint)

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of ant state or territory or the District of Columbia. U.S.C. 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under Bivens, explain how each defendant acted under color of federal law. Attach additional pages if needed

Under U.S.C.S. 1983, and under color of law, myself and others were nearly denied our lives, as others died from Covid 19. Additionally, the M.D.O.C. took personal property and legal work from me and refused to answer why or any grievances I filed.

## III. Prisoner Status

Indicate whether you are a prisoner or confined person as follows (check all that apply)

Pretrial detainee

Civilly committed detainee

Immigration detainee

X  Convicted and sentenced state prisoner

Convicted and sentenced federal prisoner

Other (explain)_____

## IV. Statement of claim

State as briefly the facts of your case. Describe how each defendant was personally involved in the alledged wringful action, along with the dates and locations of all relevant events. You may wish to include further details such as names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a seperate paragraph. Attach additional pages if needed.

At St. Louis Correctional Facility, Prison guards refused to wear their masks during covid 19. They said they hoped to catch it to get some time off. The whole compound caught it. I was sent to the emergency room, and then sent to Duane waters to die. I survived and was next sent to Parnall Correctional Facility. * days later, my property arrived. Some of my legal work was missing and all of my food was gone. I wrote grievances to resolve the matter and got nowhere and exausted my claims with noone answering why this occurred.

5

MIED ProSe 14(Rev 5/16) Complaint for Violation of civil rights (prisoner Complaint)

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

(1)   At the Wayne County jail, the voice recognition system on the payphones did not work. Because of this, other inmates stole time off my phone. It was reported and nothing was done about it. Additionally, store belongings could not be secured because there was no place to lock them up. Between the phone and store, more than $500.00 was stolen from me.

(2)   Covid 19 at St. Louis Correctional Facility left me with physical issues. Over $150.00 of my food was stolen by the M.D.O.C., who did not answer grievances accordingly.

C. What date and approximate time did the events givu=ing rise to your claim(s) occur?

(1) 12-20-17

(2) 11-16-20

6

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

D. What are the facts underlying your claim(s)? (for example: what happened to you? Who did what? Was everyone else involved? Who else saw what happened?

(1) I was questioned about my phone and store priveledges being stolen, but nothing was ever done about it. I was never reimbursed.

(2) Staff knew I was very ill and left me on my bunk to die.
I am now left with memory problems. The M.D.O.C. feels it is O.K. to steal from prisoners who might die. I addressed this issue through grievances, and there responce was "just because you don't like the answer you recieve, doesn't mean we are wrong".

7

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

V. If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did not recieve.

(2) I was sent to Duane Waters prisoner hospital on 12-12-18, and recieved no further medical attention. I was there 11 days. I have memory recall issues and I have covid lung. The last thing you do in michigan prisons is ask for medical help. You won't recieve any.

VI. Relief

State briefly what you want the court to do for you. Make no legal arguements. Do not cite any cases or statutes. If requesting money damages, include the amount of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

(1) I want to sue the wayne county jail for deliberate indifference of the law. They were made aware and did nothing. Replace the $550.00 that was stolen from me. $50,000.00 Punitive damages.

(2) I want to sue the M.D.O.C. and the 2 previously mentioned institutions for their deliberate indifference to medical needs of prisoners. I now have physical issues, and I would like them to return the items they stole from me and to be penalized for not sending me my legal work. Replace the $152.00 they stole from me and $100,000.00 for pain and suffering, and $100,000.00 punitive damages.

Michael hathaway denied me counsel at trial. I seek a new trial. I seek to show the evidence that was denied to me at trial.

8

MIED ProSe (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

VII. Exaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. 1997e(a) requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exausted your administrative remedies.

A. Did your claim(s) arise while you were confined in jail, prison, or other correctional facility?

X  Yes

    No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

(1) Wayne County Jail, 570 Clinton St., Detroit, Michigan, 48226

(2) St. Louis Correctional Facilityt, St. Louis, Michigan

(3) Parnell Correctional Facility, Jackson, Michigan

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

X  Yes

    No

    Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

    yes

X  No

    Do not know

If yes, which claims?

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

D. Did you file a grievance in the jail, prison or other correctional facility where your claim(s) arose concerning the facts related to this complaint?

X yes

   No

If no, did you file a grievance about the events in the complaint at any other jail, prison, or other correctional facility?

   Yes

   No

E. If you did file a grievance:

   1. Where did you file a grievance?

   (A) Wayne County Jail, 570 Clinton St., Detroit, Michigan, 48226

   (B) St. Louis Correctional Facility, St. Louis, Michigan (thru the mail, not answered).

   (C) Parnell Correctional Facility, Jackson, Michigan (denied with no administrative hearing)

10

MIED ProSe 14 (Rev 5/16) Complaint for Violation of civil rights (Prisoner Complaint)

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (describe all efforts to appeal to the highest level of the grievance process.)

(1) I wrote grievances. I spoke to investigators and sergents. No remedy came out of it. I was next sent to prison.

(2) I wrote grievances. and filed a grievance in lansing. I spoke to staff who could do nothing because of policy.

F. If you did not file a grievance:

(1) If there are any reasons why you did not file a grievance, state them here:

2 If you did not file a grievance, but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

G. Please set forth any additional information that is relevant to the exaustion of your administrative remedies.

(note You may attach exhibits to this complaint any documents related to the exaustion of your administrative remedies.)

11

**VIII.   Previous Lawsuits**

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐　　Yes

☒　　No

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

A.　　Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐　　Yes

☒　　No

B.　　If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below.  *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.　　Parties to the previous lawsuit

Plaintiff(s)　　_____

Defendant(s)　　_____

2.　　Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.　　Docket or index number

_____

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil Rights (Prisoner Complaint)

4. Name of judge assigned to your case

_____

5. Approximate date of filing lawsuit

_____

6. Is the case still pending?

   Yes

   No

7. What was the result of the case? (for example: Was the case dismissed? Was judgement entered in your favor? Was the case appealed?

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

   Yes

X No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)

   (1) Parties to the previous lawsuit

       Plaintiff(s)  _____

       Defendant(s)  _____

   (2) Court (if federal court, name the district; if state court, name the county and state)

   (3) Docket or index number

       _____

MIED ProSe 14 (Rev 5/16) Complaint for Violation of Civil rights (Prisoner Complaint)

4. Name of Judge assigned to your case

5. Approximate date of filing lawsuit

6. Is the case still pending?

    Yes

    No

If no, give the approximate date of disposition. _____

## IX. Certification and closing

    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of rule 11.

## A. For parties without an attorney

    I agree to provide the clerk's office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the clerk's office may result in the dismissal of my case.

Date of signing: 8-30 , 2021.

Signature of Plaintiff _Steve Ellis Karacson_

Printed name of plaintiff    Steve Ellis Karacson

Prison Identification #    437627

Prison Address    Parnell Correctional Facility

                     1790 E. Parnell Road

                     Jackson, Michigan, 49210.

MIED ProSe 14 (Rev 5/16)  Complaint for Violation of Civil Rights (Prisoner Complaint)

**Additional Information:**

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | | | |

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Steve Ellis Karacson | 437527 | St.Louis | N-159 | 12-1-20 | 3-29-21 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _____
If none, explain why. On 12-31-2020 I sent a grievance to st louis Correctional facility. It was never answered.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.  Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

see attached

_____
Grievant's Signature

RESPONSE (Grievant Interviewed? ☐ Yes ☐ No   If No, give explanation.  If resolved, explain resolution.)

_____       _____
Respondent's Signature        Date          Reviewer's Signature          Date

_____       _____
Respondent's Name (Print)     Working Title   Reviewer's Name (Print)      Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | _____ Grievant's Signature | _____ Date |
|---|---|---|---|

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | | |

> Be brief and concise in describing your grievance issue.   If you have any questions concerning the grievance
> procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Steve E. Karacson | 437627 | STF | 1-24-101 | 12-20 | 2-9-21 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 12-12-2

If none, explain why.   I wrote a letter to administration at St. Louis correctional
institution. I requested a DTMB-1104-p form to have my items replaced i have
heard nothing from either institution.  I was asked by this institution
to submit a list of lost items. I did so. there has been no responce to
this request. I was hospitalized in the emergency room with covid-19.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

I was hospitalized in the emergency room and next was sent to dwma
waters, then transferred here. I have not recieved an answer from then
or you. 113 food items were not sent from St. louis. I wish to proceed
to step 2. I am out approximately $149.00, all because I was sick with cov
19. This was not my fault.

_____
Grievant's Signature

RESPONSE (Grievant Interviewed?   ☐ Yes   ☐ No    If No, give explanation.  If resolved, explain resolution.)

| Respondent's Signature | Date | Reviewer's Signature | Date |
|---|---|---|---|
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____   Grievance Identifier: | | | | | | | | | | | | | | | | |

Be brief and concise in describing your grievance issue.  If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP 03.02.130 available in the prison Law Library

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| steve Ellis Karacson | 437627 | parnall | 1-24-10 | 12-1-20 | 3-29-21 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? _____
If none, explain why.   On 12-31-20, I contacted the grievance coordinator. I did not recieve a responce at step 1 or step 2

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.

see attached.

_Steve Karacson_
Grievant's Signature

---

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No    If No, give explanation.  If resolved, explain resolution.)

_____   _____   _____   _____
Respondent's Signature          Date          Reviewer's Signature          Date

_____   _____   _____   _____
Respondent's Name (Print)    Working Title    Reviewer's Name (Print)    Working Title

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | | |
|---|---|---|---|
| | | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER/PAROLEE GRIEVANCE FORM**

4835-4247  10/94
CSJ-247A

Date Received at Step I _____    Grievance Identifier: | | | | | | | | | | | | | |

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| Steve ellis Karacson | 437627 | parnall | 1-24-10 | 12-1-20 | 4-29-20 |

What attempt did you make to resolve this issue prior to writing this grievance?  On what date? 12-3§-20
If none, explain why.  Previously, I requested a DTMB-1104-p form and filled  it
out. noone answered. some time passed and I requested to go to step 2.
Still no answer. I requested to go to step 3. No answer. I next asked for
an administrative hearing. I still have not had that hearing. the
process has started over.

State problem clearly.  Use separate grievance form for each issue.  Additional pages, using plain paper, may be used.
Four copies of each page and supporting documents must be submitted with this form.  The grievance must be submitted
to the Grievance Coordinator in accordance with the time limits of OP 03.02.130.  I was sent to gratiot
hospital with covid 19. I nearly died. My belongings were packed up
by someone else. I never recieved most of my food items. Policy states:
Prisoner Personal property: If a prisoner incurrs a loss through no
fault of their own, they may petition the institutions prisoner
benefit fund (PBF) as provided in PD 04.02.110 or request reimbursement
through the state administrative board. in accordance with PD 03.02.131
"prisoner Adm. Bd. property claims. I have been spun by this instit-
ution since this occurred. I ask that my property be returned to me.
I have no supporting documents. I know what I had. see attached list.
I'm asking for an administrative hearing on this. Please send me the
proper forms to cover my losses. I dont know what happened to my food
items. I only know I have not recieved them and a lot of requests  have
been made by me, and a lot of time has passed and I keep getting spun.
I did nothing wrong.

_Grievant's Signature_

RESPONSE (Grievant Interviewed?  ☐ Yes  ☐ No     If No, give explanation.  If resolved, explain resolution.)

Respondent's Signature _____    Date _____    Reviewer's Signature _____    Date _____

Respondent's Name (Print) _____    Working Title _____    Reviewer's Name (Print) _____    Working Title _____

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | |
|---|---|---|
| | Grievant's Signature | Date |

DISTRIBUTION:   White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

Date: March, 29, 2021

to: P.C. McDANIEL, GRIEVANCE COORD.; ST. LOUIS CORR. FACILITY)

From: Steve Ellis Karacson, #437627, 1-24-10

Re: Hearing on NOI

On 12-1-2020, a notice of intent to conduct an administrative hearing was issued by St. Louis Correctional facility.

I have never had a hearing on this and I have not waived the hearing. Therefore, I am still entitled to a hearing on this matter. Please advise me when you will conduct a hearing so that i can provide my defense.

Respectfully submitted

*Steve Ellis Karacson*

Date. 3-29-21 .

Steve Ellis Karacson

I did not recieve a proper responce at step I. *POLICY*

Prisoners property pack up
(C). Prisoners traveling from any other facility shall be
provided with a duffel bag or similarly sized "CONTAINERS"
authorized by the CFA Deputy Director in which the prisoners
personal property fits into footlockers owned by tthe prisoner...

(4). staff...itimizes all property on the prisoner personal
property reciept...of which I never recieved.

Prisoner personal property
(8). ...If a prisoner incurrs a loss through no fault of their
own (I was sent to the emergency room with Pneumonia from the
Covid 19 virus and nearly died. I was next sent to Duane waters
for 11 days, then sent here.), they may petition the institutions
Prisoner Benefit fund (PBF) as provided in PD 04.02.110
"Prisoners Benefit Fund" or request reimbursement through the
State Administrative Board, in accordance with PD 03.02.131
"Prisoner Administration Board Property Claims."

I will repeat...if I had not contracted the Covid 19 virus, none
of this would have happened and I would not be out the $140.00
for my property. These food items were unopened. I was too sick
to eat or drink any liquids. These items would have been consumed
in the normal course of events in the 2 weeks between stores.

    I hereby request my items be given back to me as the list
that I supplied indicates that was lost in my transfer from St.
Louis to here. If this isn't followed up on, I request proper
forms for the Prisoner Benefit Fund and the Prisoner
Administration Board Property claims.
    This is a not so humane reflection on the M.D.O.C. I nearly
died in the emergency room, and while I fought for my life,
Prison staff stole my food.

*Steve Elloc Karasson*
*P.# 437627*
*parnall correctional Facility*
*1780 Parnall Road*
*Jackson, michigan, 49201*

*24-1-10*

*3-13-21*

I did not recieve a proper responce at step I.

Prisoners property pack up
(C). Prisoners traveling from any other facility shall be
provided with a duffel bag or similarly sized "CONTAINERS"
authorized by the CFA Deputy Director in which the prisoners
personal property fits into footlockers owned by the prisoner...

(4). staff...itimizes all property on the prisoner personal
property reciept...of which I never recieved.

Prisoner personal property
(8). ...If a prisoner incurrs a loss through no fault of their
own (I was sent to the emergency room with Pneumonia from the
Covid 19 virus and nearly died, I was next sent to Duane waters
for 11 days, then sent here.), they may petition the Institutions
"Prisoner Benefit Fund (PBF) as provided in PD 04.02.110
"Prisoners Benefit Fund" or request reimbursement through the
State Administrative Board, in accordance with PD 03.02.131
"Prisoner Administration Board Property Claims."

I will repeat...if I had not contracted the Covid 19 virus, none
of this would have happened and I would not the $140.00
for my property. These food items were unopened, I was too sick
to eat or drink any liquids. These items would have been consumed
in the normal course of events in the 2 weeks between stores.

I hereby request my items be given back to me as the list
that I supplied indicates that was lost in my transfer from St.
Louis to here. If this isn't followed up on, I request proper
forms for the Prisoner Benefit Fund and the Prisoner
Administration Board Property claims.
This is a not so humane reflection on the M.D.O.C. I nearly
died in the emergency room, and while I fought for my life,
Prison staff stole my food.

POOR QUALITY ORIGINAL

3 /15/2021

KARACSON 437627:

When appealing a step I grievance decision to step II you must include a legible copy of the original step I grievance copies that were returned to you, except the goldenrod copy (your original kept copy) and the yellow or green copy  (grievance office kept copy) and a copy of the decision if a separate sheet was used (except one for your records) and the step II appeal form.   Your step II appeal is being returned to you, for the reasons cited above, you did not include all the required documentation.

Grievance Coordinator:

Attention grievance coordiator;

The origional step I grievance copies were never returned to me. Additionally, I never recieved a grievance supplimental form. I pointed this out in my typed letter to you on 3-13-21. I cannot respond if you don't send me the proper paperwork and my deadline is 3-22-21.

Respectfully submitted

Steve Ellis Karacson, #437627

1-24-10   3-15 3-17/2021

*Prisoner KARACSON, 437627:*
*The SMT grievance office has received your incomplete step II grievance appeal, When appealing a step I grievance decision to step II you must include a legible copy of the original step I grievance copies that were returned to you, except the goldenrod copy (your original kept copy) and the yellow or green copy (grievance office kept copy) and a copy of the decision if a separate sheet was used (except one for your records) and the step II appeal form.   Your step II appeal is being returned to you, for the reasons cited above, you did not include all the required documentation, that was returned to you on 3/4/2021 to the SMT lock that you currently occupy.*

*Grievance Coordinator:*

# CLAIM AGAINST THE STATE OF MICHIGAN
## For Personal Losses **Less than $1,000**
### Michigan Department of Technology, Management and Budget

**DTMB-1104 Revised 4/20/2017**
State Administrative Board

STATE USE ONLY

State Administrative Board Claim Number: _____

Department Claim Number: _____

The following information is required for submission of a claim against the State of Michigan to the Finance and Claims Committee of the State Administrative Board.  See page 3 for additional information and instruction before completing this form.

## SECTION 1. CLAIMANT INFORMATION

| 1. Claimant Name (Last, First, Middle Initial) | 2. Telephone Number |
|---|---|
| **Steve Ellis Karacson** | None |

| 3. Street Address | City | State | Zip |
|---|---|---|---|
| **Parnall Correctional Facility,1780 Parnall road** | Jackson | Michigan 49201 |

### STATE EMPLOYEES ONLY

| 4. Work Department | 5. Work Location |
|---|---|
| | |

## SECTION 2. CLAIM INFORMATION

1. Name of State Agency Claim is Against (Department, College, or University)  St. Louis Correctional Facility

| 2. Date and Time of Loss | 3. Location of Loss | 4. Amount of your Claim |
|---|---|---|
| 12-1-20 | St. Louis Corr. Facility  Parnall Correctional Facility | $ 151.17 |

5. Describe your Loss, Damage, or Injury in Detail  My food and other items either were not sent, or were lost, from St. Louis Correctional Facility to Parnall Correctional facility. I never recieved them.

6. HOW DID YOU DETERMINE THE VALUE? DESCRIBE IN DETAIL THE METHOD YOU USED. Attach a **COPY** of relevant receipts, bills, or letters from insurance companies, incident reports, police reports, and other supporting documents. List each document you have attached below. List any witnesses. SUBMITTED DOCUMENTS WILL NOT BE RETURNED.  I cannot attach any reciepts as they did not arrive from St. Louis Corr. Facility. I order only certain types of food items so I know what I had.

7. Explain why you believe the State Agency listed above is responsible  I was sent to the gratiot emergency room, and nearly died, from Covid-19. I never returned there. I next wantto Duane Waters prisoner hospital for 11 days. I arrived at Parnall and did not recieve my property for 9 days. My food was not sent.

8. Explain why you are not at fault and why you could not have prevented the loss  It was not my fault I got sick. I nearly died. I have been "spun" here at parnall for over 4 months. If I was able to pack up my food, none of this would have happened. The institution packed my belongongs, this was out of my control.

9. a. Have you filed any other claims against the State of Michigan related to this loss?  additionally, I have asked for an administrative hearing at St. Louis and parnall, and have been"spun".

☐ Yes  If Yes, List the claims and/or attach copies of the claims:

☒ No

b. Have you received reimbursement for all or a portion of this claim from some other source?

☐ Yes  If Yes, Explain:

☒ No

c. Do you have any potential source of reimbursement for all or a portion of this claim, such as your own or some other person's insurance?

☐ Yes  If Yes, Explain:

☒ No

10.  Describe any other information which should be considered   I have filed grievances here at Parnall Correctional Facility, and have been "spun" twice now. It seems unethical that my food would disappear as I nearly died in gratiot hospital.

## SECTION 3. CERTIFICATION

I certify that the above information is, to the best of my knowledge true, and provided this claim or any part thereof is approved or denied, I fully release and discharge the State of Michigan, its department or agency, from all other causes of action, liabilities, and damages I may have pertaining to this claim.

_Steve Ellis Karacson_    Steve Ellis Karacson

| Signature of Claimant | Printed Name of Claimant | Date |

Claimant appeared before me on _____ and signed the release above as a free act and deed.

Notary Public,

Signature of Notary                    Printed Name of Notary                    State of Michigan

County of _____ Acting in _____ County   My commission expires _____

## INSTRUCTIONS

The DTMB-1104 Claim Form (Claim Form) must be used for personal loss claims or personal injury claims against the State of Michigan made by the General Public or State of Michigan Employee for damage or loss for amounts **less than $1,000**.  Claims must be submitted within 365 days of loss.

If the claim is against the Michigan Department of Transportation (MDOT), claimants may use the DTMB-1104 or the MDOT 3600 forms to file a claim.

- The Claim Form must be completed in its entirety.
- The Claim Form must be typewritten or written legibly in ink.
- If additional space is needed, a blank sheet of 8 ½" x 11" paper may be used and submitted with the Claim Form.
- A copy of supporting documentation must accompany the Claim Form (receipts, bills, police report, incident report, repair estimate, etc.)
- **The completed Claim Form must be signed by the claimant and notarized.**
- Keep a copy of the Claim Form and relative attachments for your records.  **Copies will not be returned.**
- The average processing time is 2-3 months.
- The State Administrative Board will notify you in writing of the action taken on this claim.
- Michigan law does not provide claimants with an appeal process for State Administrative Board decisions. Claim decisions made by the State Administrative Board are final.

Claimants must send the original, signed DTMB-1104 Claim Form with a **copy** of the supporting documents to:

State Administrative Board
State of Michigan
PO Box 30026
Lansing, MI  48909

## SPECIAL INSTRUCTIONS FOR **CLAIMS FILED BY THE GENERAL PUBLIC**:

Refer to the State Administrative Guide 0620.08 via the link below.

SPECIAL INSTRUCTIONS FOR **CLAIMS FILED BY STATE EMPLOYEES**:

Refer to the State Administrative Guide 0620.07 via the link below.

## Administrative Guide Procedures Related to State Admin Board
(http://www.michigan.gov/micontractconnect/0,4541,7-225-48756-183668--,00.html)

AFFIDAVIT
ITEMIZED LIST

```
2 BAGS Maxwellhouse coffee     8.56
2 Yellow bags coffee           7.26
2 orange bags coffee           6.12
2 bags creamer                 2.98
2 bags vanilla creamer         3.46
2 roast beef                   8.00
6 chilli with beans           14.28
6 beef staws                  12.60
9 bags of chips               11.70
6 pasta sauce                  4.38
6 stamped envelopes            3.78
10 blank envelopes              .75
1 clear shower bag             5.90
3 vanilla wafers               5.91
3 chocolate creame cookies     5.49
6 cups of cheese              10.14
5 provalone cheese             9.85
10 strawberry danish           8.10
2 peanut butter                6.58
44 soups                      15.40
```

Additionally a lot of my legal work came up missing. Mainly proof
of services.          Total 151.17
Date._____.

Steve Ellis Karacson

*Steve Ellis Karacson*

Prisoner Number 437627
Parnall Correctional Facility
1780 Parnall road
Jackson, Michigan, 49201

1of1.

To: Directors office
P.O. Box 30003
Lansing, Michigan, 48909

From: Steve Ellis Karacson
Prisoner Number 437627
Parnall Correctional Facility
1780 Parnall road
Jackson, Michigan, 49201.

### STEP III APPEAL

To whom it may concern;

On 12-1-20, I was sent from St. Louis Correctional Facility to the emergency room with pneumonia. 2 weeks earlier, I tested positive for Covid 19. Approximately 2 to 3 weeks before that, srus Sheffield had me do a mock packup. ALL OF MY LEGALWORK AND PROPERTY FIT INTO ONE DUFFEL BAG.

I was sent to the emergency room where I nearly died. I was next sent to Duane waters Prisoners hospital for the next 11 days. (gratiot hospital).

Next, I was sent to Parnall Correctional Facility. I did not recieve my property for another 8 days. When I recieved my property, I recieved a contraband removal record, and a notice of intent to conduct a hearing because 113 unopened food items did not fit into the duffel bag. Keep in mind earlier that all of my legal work and all of my property was fit into a duffel bag just a short time earlier. I mailed a grievance to St. Louis Correctional facility as soon as I could. This grievance was never answered. I requested a DTMB-1104-P form at Parnell. the form came and I filled it out. A short time later, I was told they would not refund me here because My grievance was against St. Louis Correctional Facility, who never answered my origional grievance.

I filed another grievance here at Parnell Correctional Facility, requesting to go to step II. Step II was never answered (see attached). so here we are at step III.

Let me state, I requested a legal foot locker once at St. Louis and again at Parnall. A lot of my legal work disappeared when i was packed up by officer Davidson at St. Louis Correctional Facility. Whwn I asked for the DTMB-1104-P form, I was asked to turn in a list of items that were not shipped. I did the best i could to provide this list. Officer Davidson did not list any of the 113 unopened food items he confiscated (see attached). I never recieved a responce to step II, nor did I recieve a grievance responce supplimental form. I sent the grievance coordinator a kite where I have not recieved any responces to step I or II. Here was my responce at step I (see attached).

My responce to step II is as follows. to this date I have not recieved a responce. (see attached).

### STEP III GRIEVANCE

### EXCESS LEGAL PROPERTY-HEARINGS

(C). The hearings officer should accept the prisoners representation that the specific items are necessary if it appears that there is in fact a lawsuit or appeal pending, or a lawsuit is being prepared for filing. I was in the process of an appeal. I was also filing a lawsuit against Allstate insurance company.

Additionally I asked for a legal foot locker. The responce both times was "after i have a legal hearing. These hearings were discontinued because of the Covid 19 outbreak.

PROCEDURE-1 MONTH PRIOR TO COVID 19

1 of 2.

(1). Housing unit staff (arus sheffield of St. Louis in this case) instructs prisoner to pack all belongings, except typewriter (which was done appx. 3 weeks prior by arus Sheuffield at St. Louis).
(2). Determines whether prisoner has excell legal property (ck'd by Sheffield)
(3). If the prisoner has excell property, instructs the prisoner to seperate from the excess property that the prisoner claims is allowable legal property. NOTE: It is not the role of hopusing unit staff to decide whether excess legal property is in fact legal documents or related to the prisoners lawsuits.
(15). Interviews the prisoner within 2 days after recient of the notice. I was sent to gratiot hospital, and then to Duane waters Prisoner Hospital. No such interview took place.

In conclusion, If I had not contracted covid 19, these items would have been consumed during the two week period between stores. I cannot be held at fault for this.
Additionally, a mock pack up at St. Louis was conducted and all of my property fit into 1 duffle bag. I did not pack up my property because I was nearly ded in the emergency room.
Further, There was no itemized list as per protocal produced by officer Davidson from St. Louis(see attached).
Policy says I should not have had these items confiscated. If we were in the world I would not hesitate to press charges against officer Davidson for theft. Policy supports me in this grievance procedure, which so far, remains unanswered. I have had $140.00 of my food taken from my property unnecessarily. I request that this amount be refunded to me because I was not at fault. if this is not followed up on, I hersby request the proper forms,PREAPPROVED,be sent to me from the Prisoner Benefit Fund and/or the Prisoner Board Property Claims.
I am not one looking for trouble. But I believe what happened was totally wrong anyway you want to look at it.
If I can find no relief from this grievance procedure, it would be a shame if the local newspapers were to get wind of this.

Raspectfully Submitted
Steve Ellis Karacson, #437627

Parnall Correctional Facility
1780 Parnall Road
Jackson, Michigan. 49201.

Date:_____.

Date: March 29, 2021.

To: St. Louis Grievance Coordinator

From: Steve Ellis Karacson, # 437627 , 1-24-10

    I requested a State Claim form for property lost by the M.D.O.C. The particulars of the claim are as follows:

(1). On 12-1-2020 I was taken from St. Louis Correctional Facility to Gratiot Hospital emergency room due to covid 19.

(2). C/O Davidson of N unit packed up my property and seized the items listed on the attached affidavit.

(3). the property was never returned to me.

(4). No hearing was ever had to substantiate the illegal seizure.

(5). The MDOC was solely responcible for the property once it was seized.

No *Shepard's* Signal™
As of: August 7, 2021 11:07 PM Z

## *People v. Karacson*

Court of Appeals of Michigan

February 25, 2020, Decided

No. 346236

**Reporter**

2020 Mich. App. LEXIS 1410 *; 2020 WL 908944

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v STEVE ELLIS KARACSON, Defendant-Appellant.

**Notice:** THIS IS AN UNPUBLISHED OPINION. IN ACCORDANCE WITH MICHIGAN COURT OF APPEALS RULES, UNPUBLISHED OPINIONS ARE NOT PRECEDENTIALLY BINDING UNDER THE RULES OF STARE DECISIS.

**Prior History:** [*1] Wayne Circuit Court. LC No. 18-002889-01-FC.

## Core Terms

trial court, jurors, sentence, mistrial, appointed counsel, reasonable doubt, appointed, witnesses, gasoline, phone, substitute counsel, directed verdict, investigators, probation, insured, motions, arson, defendant argues, fair trial, set fire, appears, morning, costs, ineffective assistance of counsel, trial strategy, intentionally, reassignment, intelligent, innocence, dwelling

**Judges:** Before: RONAYNE KRAUSE, P.J., and K. F. KELLY and TUKEL, JJ.

## Opinion

PER CURIAM.

Defendant, Steve Ellis Karacson, was convicted by a jury of arson of an insured dwelling, *MCL 750.76(1)(a)*, and insurance fraud, *MCL 500.4511*. This matter arises out of a fire that destroyed defendant's home. Defendant initially claimed he was in Kentucky at the time of the fire, but an examination of his cell phone records revealed he had been in the area of his home less than an hour before the fire was reported, and he purchased a gasoline can and utility gloves a few hours previously.

Defendant made a claim on his homeowner's insurance policy, and investigators concluded that the fire had been intentionally set using gasoline as an accelerant. The trial court sentenced defendant to imprisonment for 7 years to 7 years and 1 day for arson, and 1 to 4 years for insurance fraud. In two briefs filed by different attorneys and in a Standard 4 brief, defendant challenges his convictions and his sentences. Defendant's appeal is by right. We affirm.

### I. BACKGROUND

At about 8:20 p.m. on November 6, 2017, 911 received a call regarding a fire at defendant's house in Inkster, Michigan. When emergency personnel [*2] arrived, the house was fully engulfed in flames, and it took two to three hours to fully extinguish the fire. The police and defendant's homeowner's insurance company each launched investigations into the cause of the fire. Each independently concluded that the fire had multiple origin points, which was indicative of an intentionally set fire. They also each encountered an obvious smell of gasoline throughout the remains of the house. The investigators ruled out the possibilities that the fire had occurred naturally, due to electrical issues or due to natural gas. Rather, they concluded that the fire had been deliberately set using gasoline as an accelerant.

The police and the insurance company's investigator also both interviewed defendant. Defendant denied storing any flammable liquids in his house. Defendant denied to both investigators that he had been in Michigan at the time of the fire. Defendant claimed he had left Michigan on November 4 with his dogs to take them to Kentucky. He claimed he returned to Michigan just after midnight on November 7—in other words, about four hours after the fire had started. Defendant claimed he did not find out about the fire until about 7:20 a.m. [*3] on November 7. Rather than checking on his house, defendant kept a scheduled appointment at 9:00 a.m. The person with whom defendant met testified that defendant told him that his house was on fire, but when the person suggested that defendant leave to check on

 LexisNexis®

**Date and Time:** Saturday, August 7, 2021 6:07:00 PM CDT
**Job Number:** 150124903

## Document (1)

1. _People v. Karacson, 2020 Mich. App. LEXIS 1410_
   **Client/Matter:** -None-
   **Search Terms:** people v. karacson 346236 C.O.A. Mi
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

his house, defendant stated that he thought the fire was a joke.

The police analyzed defendant's cell phone records. The records confirmed that defendant left Michigan on November 4, 2017, and that he arrived at Kentucky on November 5. However, on November 6, at 1:26 p.m., defendant's cell phone connected with a cellular tower in Dearborn, Michigan. From 2:00 p.m. until 6:47 p.m., his cell phone connected to a tower in Wyandotte, Michigan. Then, at 7:41 p.m., defendant's cell phone connected to a tower in Inkster, Michigan, where defendant lived. This connection occurred about 40 minutes before the onset of the fire. There were no further connections to any cellular telephone towers from that time until the next morning. Defendant was arrested on the basis of the discrepancy between his claimed location and his actual locations as revealed by the cell phone records.

When defendant was arrested, he was found to have on his person [*4] a receipt from a hardware store in Wyandotte, showing that he had purchased a five-gallon gasoline can and a pair of utility gloves on November 6, 2017, at 3:12 p.m. The manager of the store confirmed that she had sold the can and gloves to defendant at that time. The insurance company's investigator found a new, or nearly new, gasoline can outside defendant's house. The can still had liquid gasoline in it. A former tenant of defendant testified that she had offered to purchase defendant's house in September of 2017 for $20,000, which defendant rejected as inadequate. Defendant also told the tenant that he could get more money for the house from his insurance.

As will be discussed in more detail, defendant had a contentious relationship with his appointed trial attorneys, apparently based in part on defendant's desire for his attorneys to perform certain acts on his behalf and at his direction. At the beginning of trial, defendant requested another substitute counsel, which the trial court refused. Defendant elected to represent himself instead of proceeding with his appointed counsel, which the trial court permitted. Unfortunately, due to defendant's nescient command of legal concepts, [*5] legal procedure and rules, or logic, the trial court was required to interrupt defendant on several occasions to sustain objections or explain that defendant was not permitted to do something. Further complicating the proceedings, on the second day of trial, it was discovered that one of the jurors had made an improper remark presupposing defendant's guilt, which was overheard by three other jurors. After dismissing

the juror who made the remark, interviewing all of the remaining jurors individually, and confirming that the three jurors who overheard the remark were not affected by the remark, the trial court denied a motion for a mistrial. Defendant was convicted and sentenced as described.

II. MOTION FOR DIRECTED VERDICT

In his brief on appeal and in his Standard 4 brief, defendant first argues that the trial court erred by refusing to grant his motion for directed verdict as to his arson charge.[1] We disagree.

"When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the [*6] essential elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich, 246 Mich App 101, 122; 631 NW2d 67 (2001)*. Reasonable inferences drawn from circumstantial evidence may constitute proof of the essential elements of a crime sufficient to overcome a motion for directed verdict. *People v Peña, 224 Mich App 650, 659; 569 NW2d 871 (1997)*. Minimal circumstantial evidence may also be sufficient to prove a defendant's intent and state of mind. *People v Kanaan, 278 Mich App 594, 622; 751 NW2d 57 (2008)*. It is generally the exclusive province of the jury to resolve conflicts in the evidence and in any reasonable conflicting inferences from the evidence. *Nichol v Billot, 406 Mich 284, 301-302; 279 NW2d 761 (1979)*. The jury is also entitled to decide what evidence to believe and disbelieve. *People v Howard, 50 Mich 239, 242; 15 NW 101 (1883)*.

The elements of arson of an insured dwelling are: (1) a defendant willfully or maliciously; (2) burns, damages, or destroys by fire or explosive; (3) any dwelling; (4) that is insured against loss from fire or explosion; (5) with the intent to defraud the insurer. *MCL 750.76(1)(a)*. There is no dispute that defendant's dwelling was insured and was burned, nor is there any dispute that defendant made an insurance claim for his house after the fire. Defendant implicitly contends, incredibly, that his house

---

[1] In his motion before the trial court, defendant did not articulate the charge or charges to which he intended the motion to apply. However, in response, the trial court only addressed the arson charge, which defendant seemingly accepted. In his briefs on appeal, defendant only addresses the arson charge. We therefore likewise address only defendant's arson charge.

could have burned due to natural or accidental causes. However, the evidence overwhelmingly established that the fire [*7] had been set intentionally. Consequently, the only facts seriously at issue are whether defendant is the person who set the fire, and if so, whether he set the fire with the intent to defraud his insurer. Defendant makes an unclear reference to the presumption of innocence enjoyed by criminal defendants. See *People v Banks, 249 Mich App 247, 258-259; 642 NW2d 351 (2002)*. However, in deciding a motion for directed verdict, the trial court considers only whether the jury *could* reasonably find beyond a reasonable doubt that both questions should be answered in the affirmative. Denying a motion for directed verdict in no way undermines the presumption of innocence, but rather permits the trier of fact to play its role in the criminal trial process.[2]

Defendant presents no actual argument as to the two outstanding factual issues. We could therefore consider this argument abandoned. *Mitcham v City of Detroit, 355 Mich 182, 203; 94 NW2d 388 (1959)*. Nevertheless, the evidence revealed that defendant made a remark about possibly being able to get more money for his house from his insurance company, which could reasonably imply motive. Defendant carefully removed his dogs from the house shortly before the fire, which could reasonably imply that he intentionally removed them from anticipated harm's way. Defendant lied [*8] to the police about his whereabouts when the fire started, which could reasonably imply that he was aware the fire had been intentionally set and wished to mislead the police into not investigating him further. Defendant had ample opportunity to set the fire, and he claimed he had secured the house, limiting the likelihood that anyone else could have set the fire. Shortly before the fire, defendant purchased a gasoline can and gloves, which shows that he had the immediate ability to set the fire, and, when considered in light of the other evidence, could reasonably imply that he actually did set the fire.

It has long been established that the elements of a crime may be proved beyond a reasonable doubt solely on the basis of "[c]ircumstantial evidence and reasonable inferences drawn therefrom" without

offending the presumption of innocence. *People v Jolly, 442 Mich 458, 466; 502 NW2d 177 (1993)*. The evidence presented here was not "as consistent with innocence as with guilt." Cf. *People v Sobczak, 344 Mich 465, 469-470; 73 NW2d 921 (1955)*. Consequently, the trial court properly denied defendant's motion for directed verdict and permitted the jury to decide the case.

### III. WITNESS COMMENT ON DEFENDANT'S PROBATION

In his brief on appeal, defendant argues that he was deprived of a fair trial by a single, [*9] unresponsive reference made by one witness to defendant having been on probation. We disagree.

The witness was the person with whom defendant met on the morning after the fire. The witness was the claims consultant assigned by the insurance company to defendant's claim. The trial court asked the witness to clarify whether defendant had told her that he had been in Michigan or Kentucky at the time of the fire. In response, the witness testified that defendant said he "had to be back to see [his] probation officer Tuesday morning at 9:00 a.m.," and further explained that defendant's explanation of his whereabouts had otherwise been "kind of confusing to us as well." We presume that the witness's remark was improper and impermissible. However, "[n]ot every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Waclawski, 286 Mich App 634, 710; 780 NW2d 321 (2009)* (quotation and alteration omitted).

Although it appears that the witness was genuinely attempting to answer the question, her answer was unresponsive to the question asked. Furthermore, no indication was ever given as to the crime [*10] for which defendant was on probation. Neither any witness nor the prosecutor mentioned probation again, nor did they make any effort to suggest that defendant's status as a probationer was relevant. Indeed, as defendant points out, "[t]here was no other reference during the trial to any nefarious behavior by the defendant not relating to the charged conduct." The prosecutor never attempted to suggest to the jury that defendant had a criminal history, or that he likely acted in conformity with any kind of poor character, in contrast to *People v Fredericks, 125 Mich App 114, 118; 335 NW2d 919 (1983)*, upon which defendant relies despite its

---

[2] In any event, the trial court correctly instructed the jury that it must presume defendant to be innocent and must find him not guilty unless it was satisfied that the prosecutor had carried the People's duty of proving every element of the charged offenses beyond a reasonable doubt. The motion for directed verdict was made and decided out of the jury's presence.

Case 2:21-cv-12101-LJM-EAS    ECF No. 1, PageID.36    Filed 09/01/21    Page 36 of 46

Page 4 of 9
2020 Mich. App. LEXIS 1410, *10

questionable status as "good law," see _People v Buckey, 424 Mich 1, 11-14; 378 NW2d 432 (1985)._

Based on the other evidence in this matter, we are not persuaded that the single, isolated, and nonspecific reference to defendant having been on probation had any influence on the jury's verdict. See _People v Lukity, 460 Mich 484, 494-496; 596 NW2d 607 (1999)._ Defendant may arguably have received an imperfect trial, but because perfect trials are aspirational and never actually occur in practice, defendants are only entitled to fair trials. _People v Pickens, 446 Mich 298, 313-314; 521 NW2d 797 (1994)_; _People v Miller, 482 Mich 540, 559-560; 759 NW2d 850 (2008)._ The witness's remark about defendant's probation did not deprive him of a fair trial.

IV. MISTRIAL FOR IMPROPER COMMENT BY JUROR

In his brief on appeal, supplemental brief on appeal, and Standard [*11] 4 brief, defendant argues that he was entitled to a mistrial based on an improper remark made by one of the jurors. We disagree.

"A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." _People v Haywood, 209 Mich App 217, 228; 530 NW2d 497 (1995)_ (citations omitted). A trial court abuses its discretion by denying a mistrial based on juror misconduct only if defendant's ability to get a fair trial was actually harmed, meaning the misconduct "affected the impartiality of the jury or disqualified its members from exercising the powers of reason and judgment." _People v Messenger, 221 Mich App 171, 175; 561 NW2d 463 (1997)_ (citation omitted).

On the second day of trial, one of the jurors told the trial court that during jury assembly that morning, she heard someone say something like, "you know he did it." The trial court extensively questioned all of the jurors about the "possible irregularity." The trial court's questioning of the jurors did not imply that any such statement had been made, but rather whether they had overheard anyone make a remark about defendant being guilty or not guilty. Only three jurors had overheard the remark. The trial court identified one juror who had probably made the remark and excused [*12] that juror. All of the remaining jurors agreed that such a remark would be inappropriate, that they were obligated to presume defendant's innocence, and that they should not prejudge the matter until they had heard all of the evidence. The trial court expressly stated that it would have granted defendant's requested mistrial if it "had any indication that [the excused juror] had tainted the jury . . . But all indications are to the contrary."

Defendant's argument on appeal consists of pure speculation at best, and a merely conclusory statement at worst. In order to conclude that any "real and substantial possibility" exists that the jury's verdict was affected, see _People v Budzyn, 456 Mich 77, 89; 566 NW2d 229 (1997)_, we would have to presume that all of the jurors were lying. There is simply no basis in the record for us to draw such a conclusion. Furthermore, as discussed, the evidence of defendant's guilt was overwhelming. See _id. at 89-90._ We reiterate that defendant may have received a somewhat imperfect trial, but he received the fair trial to which he was entitled. _Pickens, 446 Mich at 313-314_; _Miller, 482 Mich at 559-560._ The trial court clearly took the possibility of granting a mistrial seriously, and we find no abuse of discretion in its determination that a mistrial was not warranted.

V. [*13] SELF-REPRESENTATION AND SUBSTITUTE COUNSEL

In his supplemental brief on appeal and in his Standard 4 brief, defendant argues that he was deprived of his right to counsel because the trial court refused to permit defendant to obtain substitute counsel on the morning of the first day of trial and instead permitted defendant to represent himself. We disagree.

This argument turns on a combination of two different concepts: the right to substitute appointed counsel, and the right to self-representation. We review for an abuse of discretion a trial court's decision whether to permit a defendant to represent himself and whether to grant a substitution of counsel. _People v Hicks, 259 Mich App 518, 521; 675 NW2d 599 (2003)_; _People v Strickland, 293 Mich App 393, 397; 810 NW2d 660 (2011)._ As a general matter, we review underlying factual findings for clear error. See _People v Williams, 470 Mich 634, 640-641; 683 NW2d 597 (2004)._ Whether a defendant's waiver of the right to counsel is "knowing" and "intelligent" is reviewed de novo. _Id._

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause _and_ where substitution will not unreasonably disrupt the [*14] judicial process. [_People v Mack, 190 Mich App 7, 14; 475 NW2d 830 (1991)_ (emphasis added).]

Defendants have a limited right to discharge counsel during a trial. _People v Henley, 382 Mich 143, 148; 169 NW2d 299 (1969)_. "Good cause" to obtain substitute counsel may exist "where a _legitimate_ difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." _Mack, 190 Mich App at 14_ (emphasis added). However, "decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." _Strickland, 293 Mich App at 398_ (footnotes omitted).

It is clear from the record that the alleged breakdown in defendant's relationship with his trial counsel arose out of defendant's misapprehension that he had a right to direct appointed counsel to perform whatever acts he wished or conduct his trial in whatever way he deemed fit. See _People v LaMarr, 1 Mich App 389, 393; 136 NW2d 708 (1965)_. Appointed counsel declined to file a number of motions on defendant's behalf that, although counsel did not use such language, counsel clearly believed to be meritless or frivolous. Appointed counsel also clearly believed that defendant's theory of the case was untenable, which, based on the bewildering conspiracy [*15] theory defendant pursued, was likely a reasonable conclusion. Defendant and his appointed counsel undoubtedly had a difference of opinion as to trial strategy. However, because that difference of opinion was clearly as to whether counsel should engage in unethical, frivolous, or meritless conduct, it cannot be a legitimate difference of opinion.[3] See _People v Mitchell, 454 Mich 145, 163-164; 560 NW2d 600 (1997)_. We are also not persuaded that the trial court erred in concluding that a substitution of counsel on the morning of trial would unreasonably disrupt the judicial process. Consequently, defendant has not established that he was entitled to the appointment of substitute counsel.

Defendant affirmatively requested of the trial court that he be permitted to represent himself. The trial court warned defendant that he was facing a life offense and that defendant would be required to comply with the same procedural and substantive rules as an attorney. The trial court further warned defendant that although it would "rather not," if defendant represented himself, the

court might have to "be on top of [him] constantly." The trial court gave defendant an opportunity to ponder the implications and consult with his trial counsel. Ultimately, the trial [*16] court gave defendant a choice between acting as his own attorney with his appointed counsel as backup, or proceeding with his appointed counsel.

The trial court was required to establish that defendant's request to represent himself was unequivocal; that defendant was aware of the dangers he faced by acting as his own attorney; and that defendant's request was knowing, intelligent, and voluntary. See _People v Russell, 471 Mich 182, 190; 684 NW2d 745 (2004)_. Before allowing a defendant to represent himself, a court must establish that the defendant was sufficiently competent in general to make the choice knowingly, intelligently, and "with eyes open." _People v Dennany, 445 Mich 412, 432; 519 NW2d 128 (1994)_. In contrast, the defendant's legal competence is irrelevant. _Id._ Here, the trial court clearly made these determinations properly. The trial court recognized that defendant would pose some challenge to its duty to ensure that the procedural and substantive rules were followed during the trial, but it was clearly willing to accept that burden. See _id._ The trial court's advice to defendant substantially complied with _MCR 6.005(D)(1)_, and the opportunity it gave defendant to consult with counsel substantially complied with _MCR 6.005(D)(2)_. See _Russell, 471 Mich at 190-192_ (rejecting a "litany approach" in favor of "substantial compliance" for the court [*17] rule so long as the defendant's waiver of counsel otherwise satisfies the constitutional requirements of being unequivocal, knowing, intelligent, voluntary, and not unduly disruptive). Therefore, the trial court did not abuse its discretion by allowing defendant to represent himself, and we reject defendant's contention that his self-representation was involuntary.

## VI. INEFFECTIVE ASSISTANCE OF COUNSEL

In his supplemental brief on appeal and in his Standard 4 brief, defendant argues that he received ineffective assistance of counsel because his appointed attorney did not file certain motions, subpoena certain witnesses, or obtain certain experts. We disagree.

First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. _People v Russell, 297 Mich App 707, 715-716; 825 NW2d 623 (2012)_. The Court must analyze the issue with a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and the test

---

[3] To the extent defendant's differences of opinion with assigned counsel duplicate his arguments pertaining to ineffective assistance of counsel, we will discuss those arguments below and not repeat them here.

requires that the defendant overcome the presumption that the challenged action or inaction might have been sound trial strategy. _People v LeBlanc, 465 Mich 575, 578; 640 NW2d 246 (2002)_. Decisions about whether to call or question a witness are presumed to be matters of trial strategy. _Russell, 297 Mich App at 716_. Failing to call a witness only [*18] rises to the level of ineffective assistance of counsel if it deprives the defendant of a substantial defense. _Id._ Second, the defendant must show that, but for trial counsel's deficient performance, a different result would have been reasonably probable. _Id. at 715-716_.

We have already discussed the fact that counsel cannot be ineffective for refusing to carry out a client directive that counsel reasonably believes is unethical, illegal, frivolous, or otherwise improper. _Mitchell, 454 Mich at 163-164; see also People v Ericksen, 288 Mich App 192, 201; 793 NW2d 120 (2010)_. Furthermore, defendant must establish both that counsel committed an objective error and that the error caused defendant prejudice. _Strickland_, 466 US at 687; _Pickens, 446 Mich at 311, 314_. Several of defendant's assertions of ineffective assistance are based on counsel's failure to file certain motions that the trial court actually accepted and actually ruled on. Thus, even if the motions had legal merit and counsel committed an error by failing to file the motions, neither of which we need to consider, counsel's neglect necessarily caused defendant to suffer no prejudice.

Otherwise, defendant appears to contend that he received ineffective assistance of counsel because (1) counsel did not subpoena two witnesses despite having been given the witnesses' phone numbers, and [*19] (2) counsel did not obtain an expert witness in cell phone analysis and an expert witness in fire analysis. Defendant has not provided us with any affidavits from any proposed witnesses, so he has not established a factual predicate for his claim. See _People v Carbin, 463 Mich 590, 601; 623 NW2d 884 (2001)_. Defendant has not provided us with even a vague idea of what concrete exculpatory evidence he expects the proposed experts to have provided, and we decline to guess. Defendant has explained, albeit minimally, what general testimony he expects the two other witnesses to have provided. On that basis, we find that defendant was not prejudiced by their absence, and counsel was not ineffective for failing to pursue them.

One of the witnesses allegedly wanted to purchase defendant's house and was willing to offer $40,000, which was more money than he had been offered by his former tenant. However, defendant made an insurance claim for $167,000, which was the limit of his policy. The alternative purchase offer is still far below what defendant seemingly expected to receive from the insurance company, making its exculpatory value questionable. In any event, defendant successfully introduced the fact that he supposedly had a buyer for his house [*20] through the insurance company's claim consultant, and the trial court permitted him to argue that fact to the jury, so defendant was not prejudiced by the absence of the witness.

Defendant's other witness would supposedly have offered an alibi that defendant had been in Wyandotte "all day and night on November 6, 2017," the day of the fire. Given the objective evidence that defendant had been in Inkster shortly before the fire, we do not fault counsel for declining to pursue this witness. Again, counsel cannot be ineffective for refusing to pursue a course of action counsel reasonably believes to be frivolous, perjurious, unethical, or otherwise improper. See _Mitchell, 454 Mich at 163-164; Ericksen, 288 Mich App at 201_.

Defendant also argues that his former tenant who had offered to purchase defendant's house should have been impeached with her criminal or psychiatric history.[4] In any event, the witness, by her own admission on the stand, had a closed head injury from an automobile accident. From comments made by the prosecutor during closing argument, it was readily apparent from her testimony that she "may not pick up on things as fast." Defendant successfully elicited from her that she took "several medications," including Xanax and Topamax, [*21] and despite the trial court's admonition that he was straying from permissibility, an implication that she may have had some other psychiatric issues. Of more proper relevance, defendant further elicited that after he rejected the witness's "low ball" offer to buy his house, their ensuing discussion became "pretty heated."

It is clear from defendant's questioning at trial, and our best guess at defendant's haphazard collection of statements in his Standard 4 brief, that defendant wanted to impeach the witness by establishing her character. Defendant accurately observes that a witness's bias and credibility are almost always relevant. _People v Layher, 464 Mich 756, 762-765; 631 NW2d 281 (2001)_. However, relevant evidence may

---

[4] However, we note that it is difficult for us to discern whether defendant attributes that failure to counsel or to the trial court.

nevertheless be inadmissible. _Id. at 765_. A witness's arrest history might be relevant and admissible, but it is not relevant _per se_. _Id. at 767-771_. Defendant has not explained how the witness's arrest history has any actual relevance to her memory or her motives in this case. Otherwise, "[e]vidence of a person's character or a trait of character" generally "is not admissible for the purpose of proving action in conformity therewith on a particular occasion." _MRE 404(a)_. Defendant's interest in the witness's arrest history appears to have no other purpose, [*22] so the trial court properly deemed it inadmissible. In any event, defendant cannot establish prejudice, because he successfully established that the witness might not have been entirely reliable and might have had some motive to lie. The witness testified that she had no reason to lie, and the jury was entitled to believe the witness.

In summary, we find no basis to conclude that defendant received ineffective assistance of counsel, and although he may not have been able to pursue his theory of the case in the manner he wished, he was able to present the salient points to the jury.

VII. SENTENCE

In his supplemental brief on appeal, defendant argues that the trial court improperly imposed excessive costs. In his Standard 4 brief, defendant argues that the trial court's sentence for his arson conviction violated the prohibition against minimum sentence terms exceeding two-thirds of the maximum sentence. We disagree with both arguments.

Because defendant did not object to the trial court's imposition of $1,300.00 in costs, this issue is unpreserved. _People v Jackson, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009)_, and we review it for clear error affecting defendant's substantial rights. _People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999)_. _MCL 769.1k(b)(iii)_ provides that the trial court may impose "any cost reasonably [*23] related to the actual costs incurred by the trial court without separately calculating those costs involved in the particular case . . . . " It may impose costs based on the average case. _People v Cameron, 319 Mich App 215, 235; 900 NW2d 658 (2017)_. The trial court did not provide an ideal record, but we take notice that according to the State Court Administrative Office, the average cost of a felony case in Wayne Circuit Court is $1,439.60. We are not persuaded that the trial court's imposition of costs was clearly improper.

Defendant's argument regarding the so-called "two-thirds rule," or the "_Tanner_[5] rule," is inapposite. Under the "_Tanner_ rule," the minimum term of an indeterminate sentence must not exceed two-thirds of the maximum term. _People v Thomas, 447 Mich 390, 392; 523 NW2d 215 (1994)_. Defendant accurately observes that 7 years is more than two-thirds of 7 years and 1 day. However, as was discussed at sentencing, defendant's arson conviction is punishable by a maximum term of imprisonment for "life or any term of years." See _MCL 750.76(3)(a)_. The "_Tanner_ rule" simply does not apply to such sentences. _People v Floyd, 490 Mich 901, 902; 804 NW2d 564 (2011)_. We find no error in the trial court's sentence.

VIII. ALLEGED JUDICIAL IMPROPRIETY

In his Standard 4 brief, defendant presents a confusing accumulation of unclear arguments to, apparently, the general effect [*24] that the trial court engaged in various acts of impropriety. These alleged improprieties included reassigning his case from one judge to another, interfering with defendant's efforts to question witnesses and admonishing defendant in front of the jury, excluding certain evidence, and other matters already discussed above. Much of defendant's argument is premised on defendant's obvious misapprehensions of the law, procedural rules, and evidentiary rules. For the most part, we find defendant's arguments to reflect a tragic example of what can happen when a person untrained in either law or logic attempts to deploy both.

Defendant presents several points of law without citation to any authority, probably because they are simply wrong and no such authority exists. For example, defendant contends that the trial court erred by defining reasonable doubt to the jury. This is simply wrong. The trial court is not required to define "reasonable doubt" for the jury, and it may not give the jury an inaccurate definition of "reasonable doubt." _People v Allen, 466 Mich 86, 90-93; 643 NW2d 227 (2002)_. However, the trial court is not prohibited from providing the jury with a correct definition of "reasonable doubt." _Id.; Victor v Nebraska, 511 US 1, 5; 114 S Ct 1239; 127 L Ed 2d 583 (1994)_. Here, the trial court read to [*25] the jury the definition of reasonable doubt set forth in M Crim JI 1.9(3)[6], the general language of which has long been

_____

[5] _People v Tanner, 387 Mich 683; 199 NW2d 202 (1972)_.

[6] M Crim JI 1.9(3) presently reads: "A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but a

established as a correct definition. _Allen, 466 Mich at 88 n 1_; _People v Gillard, 216 Mich 461,466, 470; 185 NW 734 (1921)_. For another example, defendant contends that the prosecutor was obligated to perform a background check on all witnesses. We have been unable to find any authority from which such an extraordinary proposition could even be implied.

Defendant presents a variety of citations to cases from other jurisdictions. Cases from other jurisdictions, including lower federal courts, might have some persuasive value, but they are not binding on this Court. _People v Woodard, 321 Mich App 377, 385 n 2; 909 NW2d 299 (2017)_. Defendant presents what appear to be summaries of what he believes to be the salient points from those cases, but he does not explain how most of them are supposed to be relevant to the instant case. Several of defendant's citations do not even appear to exist. Absent unusual circumstances not present here, this Court will not go to extreme efforts to decipher an incomprehensible or poorly explained argument and craft a better argument on behalf of a party. _People v Harlan, 258 Mich App 137, 140; 669 NW2d 872 (2003)_; _Cameron, 319 Mich App at 232_. Criminal defendants appearing in propria persona are held to "less stringent standards than formal pleadings drafted by lawyers." [*26] _Hanes v Kerner, 404 US 519, 520; 92 S Ct 594; 30 L Ed 2d 652 (1972)_; see also _People v Herrera, 204 Mich App 333, 338-339; 514 NW2d 543 (1994)_. However, such defendants remain obligated to provide support for their claims and an argument that is at least intelligible. _Estelle v Gamble, 429 US 97, 106-108; 97 S Ct 285; 50 L Ed 2d 251 (1976)_.

We are unable to comprehend defendant's argument regarding the reassignment of his case. Defendant apparently was surprised by the reassignment, but he nevertheless did not miss any court appearances of which we are aware. Defendant contends that the reassignment caused him to be unable to file certain motions, but the trial court actually accepted those motions as if they had been properly filed, gave them consideration, and ruled on them. Presuming the reassignment was in some way irregular, we cannot comprehend how defendant was prejudiced. Regarding

the exclusion of evidence, to the extent we have not already discussed any particular evidence and to the extent defendant provides a coherent reason to believe the evidence even exists, we find no merit in any argument we can discern suggesting that the evidence was admissible or legally relevant.

The most significant argument defendant presents, and the most easily understood, concerns the trial court's interruptions of defendant's examination of witnesses and explanations that defendant was attempting [*27] to do something impermissible. We have reviewed the transcripts of the trial, and we have found no occasion upon which the trial court appears to have precluded defendant from asking a legally proper question. As the trial court warned defendant, he would be obligated to comport with the law and with the rules of procedure and evidence. The trial court was obligated to ensure that defendant did not exceed what would be permitted of any lawyer. We find that the trial court displayed remarkable patience and made heroic efforts to accommodate defendant's obvious incomprehension of those rules. The right to present a defense does not include a right to violate the law, delve into irrelevancies, or flout rules of evidence and procedure. _People v Hayes, 421 Mich 271, 279; 364 NW2d 635 (1984)_; _People v Arenda, 416 Mich 1, 8; 330 NW2d 814 (1982)_. The trial court did not commit any impropriety or display any bias that we can discern.

IX. "MOTION FOR PEREMPTORY REVERSAL"

In his Standard 4 brief, defendant finally presents what he calls a "motion for peremptory reversal." To the extent defendant's "motion" is comprehensible, it is actually an argument that he was impermissibly convicted of violating a non-existent statute. Defendant apparently fails to understand the difference between a charge code [*28] and a statute. Defendant's judgment of sentence, which we infer to be the source of defendant's confusion, reflects that his "arson of insured dwelling" conviction is based on the charge code "750.761A." Defendant accurately observes that there is no such statute as "MCL 750.761A." Although understandably an opaque practice to those unfamiliar with it, the charge code of 750.761A is, in fact, a reference to _MCL 750.76(1)(a)_. Defendant was therefore charged and convicted accurately. We further note that defendant's reference to _MCL 750.76(3)(a)_ refers to the statutorily defined punishment, not to the conduct that constitutes a violation of the law. Defendant's purported motion is premised on a reasonable misunderstanding, but we deny that motion.

---

doubt based on reason and common sense. A reasonable doubt is just that [sic] a doubt that is reasonable, after a careful and considered examination of the facts and circumstances of this case." All predecessor model jury instructions defining "reasonable doubt" have used very similar language.

2020 Mich. App. LEXIS 1410, *28

Affirmed.

/s/ Amy Ronayne Krause

/s/ Kirsten Frank Kelly

/s/ Jonathan Tukel

**End of Document**



Neutral
As of: August 7, 2021 11:08 PM Z

# *People v. Karacson*

Supreme Court of Michigan

September 29, 2020, Decided

SC: 161236

**Reporter**

2020 Mich. LEXIS 1637 *; 506 Mich. 919; 948 N.W.2d 559

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v STEVE ELLIS KARACSON, Defendant-Appellant.

**Subsequent History:** Reconsideration denied by *People v. Karacson, 2020 Mich. LEXIS 2188 (Mich., Dec. 22, 2020)*

**Prior History:** [*1] COA: 346236. Wayne CC: 18-002889-FC.

*People v. Karacson, 2019 Mich. App. LEXIS 4688 (Mich. Ct. App., Aug. 14, 2019)*

**Judges:** Bridget M. McCormack, Chief Justice. David F. Viviano, Chief Justice Pro Tem. Stephen J. Markman, Brian K. Zahra, Richard H. Bernstein, Elizabeth T. Clement, Megan K. Cavanagh, Justices.

# Opinion

**Order**

On order of the Court, the application for leave to appeal the February 25, 2020 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court. The motion for a new trial is DENIED.

**End of Document**

 LexisNexis®

**Date and Time:** Saturday, August 7, 2021 6:08:00 PM CDT
**Job Number:** 150124913

## Document (1)

1. _People v. Karacson, 2020 Mich. LEXIS 1637_
   **Client/Matter:** -None-
   **Search Terms:** people v. karacson 161236
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

 Neutral

As of: August 7, 2021 11:09 PM Z

# *People v. Karacson*

Supreme Court of Michigan

December 22, 2020, Decided

SC: 161236

**Reporter**

2020 Mich. LEXIS 2188 *; 506 Mich. 1028; 951 N.W.2d 896; 2020 WL 7647795

PEOPLE OF THE STATE OF MICHIGAN, Plaintiff-Appellee, v STEVE ELLIS KARACSON, Defendant-Appellant.

**Prior History: [*1]** COA: 346236. Wayne CC: 18-002889-FC.

*People v. Karacson, 948 N.W.2d 559, 2020 Mich. LEXIS 1637 (Mich., Sept. 29, 2020)*

## Core Terms

reconsideration

**Judges:** Bridget M. McCormack, Chief Justice. David F. Viviano, Chief Justice Pro Tem. Stephen J. Markman, Brian K. Zahra, Richard H. Bernstein, Elizabeth T. Clement, Megan K. Cavanagh, Justices.

## Opinion

### Order

On order of the Court, the motion for reconsideration of this Court's September 29, 2020 order is considered, and it is DENIED, because we are not persuaded that reconsideration of our previous order is warranted. *MCR 7.311(G)*.

**End of Document**

 **LexisNexis**

**Date and Time:** Saturday, August 7, 2021 6:09:00 PM CDT
**Job Number:** 150124920

## Document (1)

1. *People v. Karacson, 2020 Mich. LEXIS 2188*
   **Client/Matter:** -None-
   **Search Terms:** people v. karacson 161236
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

**LexisNexis** | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2021 LexisNexis



U.S POSTAGE

9/1/2021

UNITED STATES DISTRICT COURT
EASTERN DIVISION OF MICHIGAN
THEODORE LEVIN U.S. COURTHOUSE
231 W. LAFAYETTE BOULEVARD
DETROIT, MICHIGAN
48226

21-1-2021

STEVE ELLIS KARACSON, PR. # 497627
PARNA
1790 E—
JACKSON, MICHIGAN, 49201

RECEIVED
SEP 09 2021
CLERK'S OFFICE
U.S. DISTRICT COURT